## 27086. EVANS v. THE STATE.

UNDERCOFLER, Justice. Isaiah Evans was convicted in the Superior Court of Chatham County for the offense of armed robbery and was sentenced to serve twenty years in the penitentiary. He appeals to this court. *Held:*

1. The appellant contends that he was not advised of his constitutional rights under Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974). The evidence does not show that the appellant made any statement to the investigating officers or that they ever interrogated him about the charges brought against him. The contention is without merit.
2. The appellant contends that the court erred in allowing Robert E. Falligant, Jr., who he contends had previously been appointed to represent him, to participate in the preparation of the State's case; that Falligant had appeared on his behalf at the preliminary hearing; that thereafter Falligant was appointed to the District Attorney's staff; and that Falligant indirectly participated in his prosecution and disclosed privileged and confidential information obtained from him.

The record shows that Falligant's name appeared as attorney for the appellant on the criminal warrant.

Before this trial began, the attorney for the appellant stated to the court that Falligant was the original attorney appointed by the court to represent the appellant. Andrew J. Ryan, III, Assistant District Attorney, who represented the State in this prosecution, then stated to the court that he wanted to "clear up some of the things . . . Number one, Mr. Falligant was not appointed to represent this man. Mr. Falligant represented our office— the District Attorney's office at the preliminary hearing on June 4, 1970 . . ."

The attorney for the appellant insists that Falligant was present in the courtroom when Ryan made this statement and that he has reason to believe that Falligant and Ryan participated jointly in the preparation of the State's case.

There is nothing in this record which shows that Falligant even discussed this case with the appellant or even knew that his name appeared on the criminal warrant as the appointed attorney. The record shows that the prosecution was conducted by Ryan and there is nothing in the

record to show that Falligant participated in the prosecution in any way. It follows that this enumeration of error is without merit.

3. The jury was authorized to find from the evidence that Isaiah Evans, Cephas Scott and another man drove into the Spur Service Station in Chatham County in a 1960 black Cadillac on May 23, 1970; that Evans went into the station and bought a pack of cigarettes; that about 11:34 p.m. that same day, the vehicle returned and Evans and Scott went into the station and into the rest room. When they came from the rest room, Scott had a pistol in his hands; they forced the attendant, Warren Austin, to go into the rest room; and that they frisked him and took from him about $10 in change, $15 in bills, and his wallet containing $3. Scott said that there must be more money than that, gave Evans the gun, and went into the other room and rifled the drawers in the office of the station; and that when Scott returned to the rest room, Evans asked him if he should shoot Austin and was told "no." They told Austin to stay in the rest room 15 minutes. A room at the back of the station contained a cot where another attendant, Pat Waddell, was lying down but was not asleep. When the door to this room was opened by the robbers, Waddell saw them pointing a gun at him, he grabbed the gun, a scuffle ensued, he was struck on the side of the head with a pack of cold drinks, he fell back on to the cot; and then Evans shot him in the chest. Waddell had seen Evans in the station several times before but had never sold him a gun. After the robbers left the station, Austin came from the rest room to see about Waddell. Both attendants identified the gun introduced in evidence as being similar to the one used in the robbery. Austin identified the Cadillac as being similar to the one used in the robbery.

The police were called about 11:45 p.m. immediately after the robbery. Descriptions of the robbers and the Cadillac were given to them as well as the amount and kind of money taken in the robbery. The police began patrolling

the area and about an hour later saw a Cadillac fitting the description of the vehicle used in the robbery; the vehicle was stopped; and the two occupants fitted the descriptions which had been given the police officers. Isaiah Evans and Cephas Scott were in the car; Evans had a plate of barbecue in his hands and was sitting on the passenger side; they were ordered out of the car by the officers; a .38 caliber snub-nose revolver was in plain view on the floorboard where Evans had been sitting and it had been recently fired. Evans was wearing the clothing formerly described by the victims and a pair of brown suede shoes with an orange strip on them. When Evans walked to the patrol wagon, the officers heard a jingling sound in his shoes and the shoes were removed; the officers found 3 one dollar bills in the left shoe, the right shoe contained six dollars and eighty-four cents in silver, and eight one dollar bills were found in Evans' pocket.

In his unsworn statement the appellant told the jury that he knew Pat Waddell and had recently bought a gun from him for his protection; that he was to pay Waddell $35 for the gun but only had $25 at the time of the purchase and owed Waddell $10 more for the gun; that he went to the station that night to pay Waddell the $10 but Waddell told him that he had not made any payment on the gun; that a scuffle followed during which Waddell was shot; and that he did not rob the station and only went there to settle the payment for the gun.

The trial court properly overruled the motion for new trial on the general grounds.

4. The appellant contends that it was error for the court to admit in evidence over his objection the .38 caliber pistol obtained from the Cadillac at the time of his arrest because there was no evidence that this pistol was the one used in the robbery or that it was the one which injured Waddell. There is no merit in this contention.

In *Lively v. State,* 178 Ga. 693, 695 (173 SE 836) this court said: "It appears without dispute that the crime was

committed with a razor, and it would make no material difference whether or not the weapon it was sought to identify was the particular razor with which the homicide was committed. The identification was sufficient to authorize the jury to decide, under the evidence relative to identification, whether or not it was the identical weapon used by the defendant." *Katzensky v. State,* 228 Ga. 6 (3) (183 SE2d 749).

5. The trial court charged the jury: "A person convicted of armed robbery shall be punished by death or imprisonment for life, or by imprisonment for not less than one nor more than 20 years."

The appellant contends that this charge violates his rights under the Eighth and Fourteenth Amendments of the United States Constitution (*Code* §§ 1-808, 1-815), because no legal standard is set forth for determining the degree of punishment thereby leaving the jury to capriciously and without substantial reason impose the strictest and most severe penalty allowed by law and because it imposes cruel and unusual punishment. He contends that the fact he received a twenty-year sentence does not bar him from challenging the charge. The charge was based on *Code Ann.* § 26-1902 (Ga. L. 1968, pp. 1249, 1298; 1969, p. 810).

(a) "In *Sims v. Balkcom,* 220 Ga. 7, 12 (136 SE2d 766), this court held that the statute fixing the punishment for rape was constitutional as against the attack that it furnished no standards to govern the jury in making its determination of the sentence. In the *Sims* case we held: 'Lawyers experienced in court procedures know that often where guilt is proved mitigating circumstances call for lessening the punishment, and the jury who hears the evidence can better than anyone else properly weigh such matters.' The constitutionality of a similar statute fixing the punishment for murder was challenged on the same basis in *Chatterton v. Dutton,* 223 Ga. 243 (154 SE2d 213), cert. den. 389 U. S. 914 (88 SC 247, 19 LE2d 266)." *Williams v. State,* 226 Ga. 140 (2) (173 SE2d 182).

The Supreme Court of the United States in *McGautha v. California*, 402 U. S. 183, 207 (91 SC 1454, 28 LE2d 711) has held: "In the light of history, experience, and the present limitations of human knowledge, we find it quite impossible to say that committing to the untrammeled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution."

It follows that the charge of the court based on *Code Ann.* § 26-1902 is not subject to this attack.

(b) Pretermitting the question of whether appellant has standing to contend that the charge violates his rights under the Eighth Amendment of the United States Constitution (*Code* § 1-808), this court has held: "So long as they [the legislature] do not provide cruel and unusual punishments, such as disgraced the civilization of former ages, and make one shudder with horror to read of them as drawing, quartering, burning, etc., the Constitution does not put any limit upon legislative discretion." *Whitten v. State*, 47 Ga. 297, 301; *Sims v. Balkcom*, 220 Ga. 7, 10 (136 SE2d 766); *Williams v. State*, 226 Ga. 140 (3), supra.

There is no merit in these contentions.

*Judgment affirmed. All the Justices concur.*
ARGUED MARCH 13, 1972—DECIDED APRIL 6, 1972.

*Morton G. Forbes*, for appellant.

*Andrew J. Ryan, Jr.*, District Attorney, *Andrew J. Ryan, III, Arthur K. Bolton*, Attorney General, *Harold N. Hill, Jr.*, Executive Assistant Attorney General, *Courtney Wilder Stanton, David L. G. King, Jr.*, Assistant Attorneys General, for appellee.